**The CITY OF WILMINGTON, a municipal corporation of the State of Delaware, et al., Plaintiffs,**

v.

**William J. CONNER, County Executive of New Castle County, et al., Defendants.**

Supreme Court of Delaware.

Oct. 30, 1972.

Victor F. Battaglia, City Sol., and G. Thomas Sandbach, Asst. City Sol., Wilmington, for plaintiffs.

Robert E. Daley, County Atty., Wilmington, for defendants.

CAREY, Justice, McNEILLY, Judge, and BUSH, Judge, sitting.

CAREY, Justice:

Several municipalities and certain property owners instituted this action in Superior Court against the New Castle County Council and its members, charging that the county tax rates established for the 1972–73 tax year violate the Federal and State Constitutions and the governing statutory provisions (T. 9, Ch. 11). The case was certified to us under Supreme Court Rule 20; we accepted the certification because the important questions raised have not heretofore been decided in this state, and because of the need for a prompt determination thereof.

Two questions were presented:

"1. Do 9 Del.Code, Ch. 11, Article VIII of the Constitution of the State of Delaware of 1897, and the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the Constitution of the United States of America require that the cost of services which support items in both the Local Service Function Budget and the General Operating Budget be apportioned between the two budgets?

"2. Has the County acted arbitrarily and capriciously in the selection and inclusion or exclusion of items in the Local Service Function Budget?"

I.

The powers and duties of the New Castle County Council are found in 55 Del.Laws, Ch. 85, which became effective on January 3, 1967. That statute conferred broad powers upon the County Council, including the power to fix the tax rate upon the assessed valuation of all taxable real property in the county.

Sub-chapter III deals with budgeting. § 1131 thereof requires the preparation and adoption of an annual operating budget divided into two parts entitled: (1) General Operating Budget, and (2) Local Service Function Budget.* The Local Service Function Budget (L.S.F.B.) consists of all anticipated expenditures for the performance of local service functions which are not performed by the County within the limits of any incorporated municipality; likewise, the estimated revenues necessary for the payment of the cost of each such local service unit shall not include any estimated revenues to be derived from *ad valorem* taxation of real property within any municipality which performs such function

---

* § 1131 reads in part as follows:

"§ 1131. Separate budgeting for local service functions performed by the County outside of the limits of municipalities

"(a) The Chief Administrative Officer and the County Executive, in the preparation of the annual operating budget, shall divide and segregate in a separate budget, entitled Local Service Function Budget, all expenditures for the performance of local service functions which are not performed by the County within the limits of any municipality. The Chief Administrative Officer and the County Executive, in the preparation of the Local Service Function Budget, shall specify separately the total appropriation required for the performance of each local service function which is not performed by the County within the limits of any municipality. The County Executive, in estimating the revenues which will be necessary for the payment of the cost of

each such local service function, shall not include in the estimate any estimated revenues to be derived from ad valorem taxation of real property within any municipality which performs such function independently for its residents and pays the cost thereof out of its own revenue sources.

"(b) The County Executive shall submit to the County Council a proposed revenue ordinance which will achieve sufficient revenues to balance the total operating budget, including the Local Service Function Budget. The County Executive in the preparation of the proposed revenue ordinance shall not, and the County Council and the County Executive in the enactment of the annual revenue ordinance shall not, impose ad valorem taxation on real property within any municipality to pay the cost of any local service function if such function is performed by the municipality for its residents and the cost thereof is paid out of municipal revenues."

independently for its residents and pays the cost thereof from its own revenue sources.

The General Operating Budget (G.O.B.) consists of the anticipated expenditures not allocable to the L.S.F.B. Estimates of revenue necessary to pay all items in the G.O.B. include amounts to be derived from *ad valorem* taxation on all taxable real property in the county.

The obvious intent of the foregoing provisions is to protect the taxables of any municipality which, from its own revenues, supplies a given local service; those taxables are not obliged to help pay the cost of the same service elsewhere provided by the County.

■ The problem now raised by the first question concerns the allocation of certain "overhead" or general government costs, such as data processing, debt service, county offices, etc., which support all the services rendered by the county government. In the county budgets for the fiscal years prior to 1972, these expenses were pro-rated among all parts of the county's operating accounts. In the budget adopted for 1972–73, however, they were assigned entirely to the G.O.B. Since that budget requires a tax upon all property owners in the county, the result is that the taxables in a municipality, which is providing some local function at its own expense without cost to the county, must help to pay for the same type of service performed elsewhere by the county, for which the municipality and its taxables receive no benefit. In our opinion, this procedure clearly conflicts with the basic legislative purpose to the extent that these "overhead" expenditures support functions properly included in the L.S.F.B.

The County argues that the "overhead" expenses cannot be divided, as a practical matter, as can the direct costs of services. We can understand that exactness may be difficult, but that fact is no reason to ignore the legislative mandate. It may be that the method of prorating heretofore followed is the nearest possible approach to full compliance with this provision; it at least honors the principle that those property owners who are paying for a given local service should not be forced to assist in paying the cost of a similar service performed elsewhere by the county. We suggest clarification on this matter by the Legislature.

Because of our interpretation of the statute, we find in unnecessary to consider the arguments advanced by the plaintiffs concerning the constitutionality of the method followed by the Council this year in budgeting "overhead" expenses. Revision must be made.

Our answer to the first question posed in the certificate is "Yes."

II.

We decline to answer the second question in the precise form submitted. Such an answer would require an examination of many of the parts of the budget as to which there appears to be no disagreement. Counsels' arguments have been confined to five specific items. We limit our review to these matters.

(A)

■ The City of Wilmington provides its own fire protection at its own expense within the city limits; the County itself maintains no similar department, but makes an annual appropriation to various volunteer fire companies in other communities. In the 1972–73 budget, the total amount of that appropriation was placed in the G.O.B. This means, of course, that property owners in Wilmington would have to pay part of the cost of providing fire protection to the rest of the county. The fact that the county handles the matter by appropriations, rather than operating fire companies itself, is immaterial; the amount is incorrectly included in the G.O.B.

### (B)

■ The municipality of Bellefonte has an agreement whereby the State Police provide police protection for its residents, without cost to the county. It is argued that Bellefonte taxables should not be charged for this item. It seems definite, however, that the agreement with the State Police is to be terminated soon, and that the county will thereafter furnish this service to the town. Just when that change will take place is uncertain; but, since it may occur very soon, we cannot say that the Council was wrong in including this item in its projected expenditures for the present fiscal year. Furthermore, since Bellefonte pays nothing for the services of the State Police, the cost of the function is not "paid out of municipal revenues"—a requirement of § 1132.

### (C)

■ The County maintains certain libraries which are available for use by any resident of the county. There is a library in Newark, which is maintained not by the city or the county, but by the Newark School District, which is not an incorporated municipality; in fact, its boundaries include areas which are not within the city itself. No provision of the Act exempts property owners of the District from payment of the tax for libraries. Taxables of Newark are therefore not entitled to credit on this item.

### (D)

■ Both the County and the City of Newark have housing and sanitary codes, but taxables of Newark are given no credit in the new budget for the services rendered by the city consisting of code enforcement. This function is specifically included in § 1102(a)(2) as a local service function. As such, credit must be given for those services. As a matter of accounting, the proper credit may be difficult to compute, but we think it is required by the statute. Here again, clarification by the Legislature would be helpful.

### (E)

■ Both the Council and the City of Newark have and support Housing Authorities. Newark does not directly contribute financially to the Newark Housing Authority, but municipal revenues are used to support it by supplying services, although the Authority pays no taxes to the city. The cost of this support comes from Newark's taxables. We think, therefore, that this item properly falls within the definition of a local service function, as plaintiffs contend.